UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


EDDIE ALLEN HARRISON III                          CIVIL ACTION

VERSUS                                            NO. 07-1043

DEPUTY U.S. MARSHAL TREY                          SECTION "M" (2)
LAFFIN ET AL.


## REPORT AND RECOMMENDATION

Plaintiff, Eddie Allen Harrison III, is a prisoner currently incarcerated in the St. Charles Correctional Center in Killona, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Deputy United States Marshal Trey Laffin and the Warden of the St. Charles Correctional Center on March 2, 2007.

Harrison alleges that he is a federal pretrial detainee who has been on lockdown for no reason since the day after he arrived at the jail on May 25, 2006 and is not allowed to participate in recreation, education, church and the law library. He states that jail personnel advised him, in response to his grievances, that Deputy Marshal Laffin had asked that he be kept in lockdown for 23 hours per day and that the Warden of the jail is honoring that request. Record Doc. No. 1, Complaint at p. 5, ¶ IV. He asks the court to order him released from lockdown and to award monetary damages. Id. at p.5, ¶ V.

## THE RECORD

According to his complaint, Harrison was arrested on May 22, 2006 and has not yet been convicted of the crimes for which he was arrested.  Plaintiff complains that he has been in lockdown since he arrived at the jail.  Copies of his grievances, which are attached to his complaint, confirm that prison officials have told him that he is being held in lockdown at the request of Deputy Marshal Laffin.

On October 11, 2006, Harrison filed a grievance stating that, since May 26, 2006, he has been locked in a cell 23 hours per day and has been unable to receive recreation time on the yard or use the telephone.  He asked if he could get his own food, laundry, store, mail and medications because other inmates are currently bringing these to him.  He also said that he does not know why he is being punished in this way.

The first step grievance response dated October 16, 2006 states:  "This is per U.S. Marshal's.  They requested that you be placed in isolation.  Therefore you were placed on 23 and One."

At step two of the grievance process, a captain responded:

Restrictions have been placed on you per the Federal Marshal, however if you would like to make attorney calls send a request to Capt. [illegible] in Booking.  Nobody as in other inmates should be handling your meds[,] send a request to Kecia Charles RN in medical; mail should be given to you also not to anyone else.  I will personally check on this.  During your hour out you can call if its [sic] allowed from your pod phone, walk around the pod area bottom floor to exercise and or take your shower.

Finally, on November 13, 2006, the step three grievance officer wrote: "By the request of Deputy U.S. Marshall [sic] Trey Lafffin you are to remain on 23 hrs. of lock down." Record Doc. No. 1, attachment to Complaint.

Because plaintiff alleges that he is being held on a federal charge and in lockdown pursuant to instructions from a Deputy United States Marshal, I have examined this court's records.  The records reveal that Harrison was arrested pursuant to a criminal complaint in Criminal Action No. 06-146.  The affidavit of a special agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives attached to the criminal complaint states that Harrison was convicted in 1999 of armed robbery, a felony, and that he shot a New Orleans Police Officer, Andres Gonzales,[1] four times on May 22, 2006.  Crim. Action No. 06-146, Record Doc. No. 1, attachment at pp. 1-2.  Harrison was charged with possession of ammunition in violation of federal law.  Crim. Action No. 06-146, Record Doc. No. 1, Criminal Complaint.

A superseding indictment dated June 2, 2006 states that Harrison was convicted of armed robbery on May 10, 1999 in Louisiana state court and that, on May 22, 2006, he violated federal law by possessing ammunition and a firearm.  Crim. Action No. 06-146, Record Doc. No. 17, at pp. 1-2.

---

[1]The officer's name is spelled Gonzales in the complaint but Gonzalez in the superseding indictment. Newspaper articles about the shooting spell it Gonzalez.

On July 18, 2006, the United States Attorney filed an unopposed motion to continue Harrison's federal criminal trial because ballistic and scientific testing was still ongoing and because Officer Gonzalez, the shooting victim, was still hospitalized. Crim. Action No. 06-146, Record Doc. No. 22, at pp. 1-2. The motion was granted. Crim. Action No. 06-146, Record Doc. No. 23.

On February 28, 2007, defense counsel moved to continue the federal trial date, stating that Harrison had been

> charged in both state and federal courts with offenses arising from the same incident. The charge in state court has a far greater potential sentence than does the charge in the federal case. Resolution of the federal charge prior to resolution of the state charge would decidedly not be in the best interest of Mr. Harrison.

Crim. Action No. 06-146, Record Doc. No. 28, at p.1. Defense counsel further stated that Harrison was being held in custody in lieu of bond in the state court case, that his state court criminal defense attorney agreed with the motion, and that the United States Attorney did not oppose the motion. Id. at pp. 1-2. The motion was granted and plaintiff's criminal trial in this court was reset for July 9, 2007. Crim. Action No. 06-146, Record Doc. Nos. 29, 30.

## ANALYSIS

I.   STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis.  28 U.S.C. § 1915A(a); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998).  Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim.  28 U.S.C. § 1915A(b)(1).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact."  Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest

which clearly does not exist.'" <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not."  <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992). A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) because it fails to state a cognizable Section 1983 claim under the broadest reading.[2]

## II.   PRISONER CLASSIFICATION

Plaintiff's complaint that he has been held in extended lockdown attempts to state a claim for denial of due process.

Like the Fifth Circuit in <u>Wilkerson v. Stalder</u>, 329 F.3d 431 (5th Cir. 2003), in which the plaintiffs had been in extended lockdown for years,

---

[2]Pro se civil rights complaints must be broadly construed, <u>Moore</u>, 30 F.3d at 620, and I have broadly construed the complaint in this case.

[I] surmise that [Harrison was] likely classified as [a] maximum custody inmate[ ] under the Louisiana Department of Public Safety and Corrections regulations.FN4

FN4. "Maximum Custody" is defined as:

> Assignment of an inmate to a cell based upon the need to protect the inmate, other inmates, the public, staff or the institution. This includes temporary assignment to Administrative Segregation or permanent assignment to Disciplinary Detention/Extended Lockdown and Working Cellblock and may include Protective Custody/Extended Lockdown.

Louisiana Dep't of Public Safety and Corrections, Inmate Classification, Sentencing, and Service Functions, § 5(C)(3) (June 1998).

Id. at 435.

Plaintiff has no constitutional right to a particular status or classification within any prison. The classification of inmates is an administrative function of the prison. Jones v. Diamond, 636 F.2d 1364, 1376 (5th Cir. 1981) (en banc).[3] Courts accord great deference to prison officials' administrative decisions and will not interfere with legitimate administration without a constitutional violation.  Bell v. Wolfish, 441 U.S. 520, 547-48 (1979);  Smith v. Bingham, 914 F.2d 740, 742 (5th Cir. 1990).  "Inmates have a federal right to due process at prison classification . . . only if state law contains

---

[3]Overruled on other grounds by International Woodworkers of Am. v. Champion Int'l Corp., 790 F.2d 1174 (5th Cir. 1986), aff'd sub. nom. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437 (1987).

'substantive predicates' limiting the prison administrators' discretion to classify, assign, and punish inmates."  Ricker v. Leapley, 25 F.3d 1406, 1409 (8th Cir. 1994); accord Canterino v. Wilson, 869 F.2d 948, 953 (6th Cir. 1989) (citing Hewitt v. Helms, 459 U.S. 460, 472 (1983)).  "Classification of inmates in Louisiana is a duty of the . . . [jailer] and an inmate has no right to a particular classification under state law."  Woods v. Edwards, 51 F.3d 577, 581-82 (5th Cir. 1995) (citation omitted).

Thus, "[i]nmates have no protectable property or liberty interest in custodial classification.  The classification of prisoners is a matter within the discretion of prison officials.  Absent an abuse of discretion, federal courts are loathe to interfere with custodial classifications established by prison officials."  Whitley v. Hunt, 158 F.3d 882, 889 (5th Cir. 1998) (citations omitted), abrogated on other grounds by Booth v. Churner, 532 U.S. 732, 735 (2001).

The same analysis applies so long as Harrison is being held in lockdown based on his criminal history, rather than for disciplinary reasons.

> In resolving the nature of the liberty interest and the process that is due for confinement of prisoners in extended lockdown under these circumstances, it is crucial to know whether, based on their crimes of conviction, the inmates' confinement is the result of an initial classification by prison officials as opposed to confinement for violations of less serious prison disciplinary rules.  Generally, courts are not concerned with a prisoner's initial classification level based on his criminal history before his incarceration.  This circuit has continued to hold post-Sandin that an inmate has no protectable liberty interest in his classification.

Wilkerson, 329 F.3d at 435-36 (citing Sandin v. Conner, 515 U.S. 472 (1995)) (additional citations omitted) (emphasis added).  Thus, the Sandin due process test (which is discussed in detail later in this report and recommendation) would only be triggered if Harrison's "confinement in extended lockdown is not the result of [his] initial classification."  Id. (emphasis added).

Harrison's complaint and grievances confirm that he is not being held in lockdown as punishment for any disciplinary infraction.  He is being held there at the request of the United States Marshal and at the discretion of the Warden of the jail, apparently based on his violent criminal history, which includes a conviction for armed robbery, the pending federal charge of being a felon in possession of a firearm and the pending state charge of attempted first-degree murder of a police officer.  According to the New Orleans newspaper, Harrison was charged with attempted first degree murder in the shooting of Gonzalez.

Plaintiff's complaint concerning improper classification at the jail is not an abuse of the discretion the law assigns to prison officials.  It is a discretionary function of Harrison's jailers, based on petitioner's demonstrable criminal history, the kind of administrative decision with which this court should not interfere.  No violation of Harrison's federal constitutional rights has occurred under the classification circumstances described in his complaint.

III.    <u>DISCIPLINARY LOCKDOWN</u>

To the extent that plaintiff may be claiming that his lockdown is imposed as punishment based on false or inadequate disciplinary charges or as a result of procedures that violated his due process rights, <u>Sandin</u> provides the analysis.

In <u>Sandin</u>, the United States Supreme Court held that analysis of a prisoner's due process claim relating to prison disciplinary action begins with determining whether a constitutionally protected liberty interest exists.  <u>Sandin</u>, 515 U.S. at 481-83.  "Liberty interests protected by the Fourteenth Amendment may arise from two sources–the Due Process Clause itself and the laws of the States."  <u>Hewitt v. Helms</u>, 459 U.S. 460, 466 (1983).  In <u>Sandin</u>, the Supreme Court recognized that although the States may create liberty interests, "these interests will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  <u>Sandin</u>, 515 U.S. at 484 (citations omitted).  Thus, in <u>Sandin</u>, when a prisoner was placed in disciplinary segregation for 30 days and the discipline did not inevitably affect the duration of his sentence, the Court held that due process does <u>not</u> require that a prisoner be afforded the procedural mechanisms previously prescribed in <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974), and <u>Hewitt</u>, 459 U.S. at 460.

"[T]he Due Process Clause does not protect every change in conditions of confinement which has a substantial adverse effect upon a prisoner."  <u>Madison v. Parker</u>,

10

104 F.3d 765, 767 (5th Cir. 1997).  The <u>Madison</u> court held that a prisoner's 30-day commissary and cell restrictions imposed as punishment for disciplinary violations were "merely changes in the conditions of his confinement and do not implicate due process concerns."  <u>Id.</u> at 768; <u>accord</u> <u>Dixon v. Hastings</u>, 117 Fed. Appx. 371, 2005 WL 17382, at *1 (5th Cir. 2005); <u>Malchi v. Thaler</u>, 211 F.3d 953, 957-58 (5th Cir. 2000).  The court further held that such restrictions are "penalties, which do not represent the type of atypical, significant deprivation in which a state might create a liberty interest." <u>Madison</u>, 104 F.3d at 768.  Examples of disciplinary hardships that <u>would</u> qualify as so atypical and significant as to implicate due process considerations include unwanted administration of anti-psychotic drugs, involuntary commitment to a mental hospital or extension of the prisoner's sentence for his underlying criminal conviction.  <u>Sandin</u>, 515 U.S. at 484.

In <u>Wolff</u>, the Supreme Court held that because disciplinary proceedings are not part of a criminal prosecution, the prisoner need not be afforded "the full panoply of rights" provided in criminal proceedings.  <u>Wolff</u>, 418 U.S. at 556.  Nevertheless, the <u>Wolff</u> Court held that prison officials must afford the prisoner <u>some</u> due process in disciplinary proceedings before imposing punishment, including notice of the violation, a hearing and some opportunity to present evidence on the prisoner's behalf.  <u>Id.</u>

In the instant case, plaintiff's complaint and attached grievance responses establish that his loss of privileges and confinement to 23-hour lockdown are <u>not</u> being imposed as punishment for any alleged disciplinary violations, but as a classification measure based on his history of violent crime and the nature of the pending charge against him, lodged with probable cause.  Even if they were, however, none of these punishments constitute such an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" that particular forms of process were required.  <u>Sandin</u>, 515 U.S. at 484; <u>see</u> <u>Dixon</u>, 2005 WL 17382, at *1 ("loss of commissary privileges, cell restriction, placement in administrative segregation, and extended work schedule were not atypical punishments requiring due process protections"); <u>Payne v. Dretke</u>, 80 Fed. Appx. 314, 2003 WL 22367564, at *1 (5th Cir. 2003) ("commissary and recreation restrictions [as disciplinary punishment] . . . do not implicate a liberty interest under the Due Process Clause"); <u>Madison</u>, 104 F.3d at 768 (same).  No claim of violation of due process rights cognizable under Section 1983 can be stated as to these matters.

Thus, Harrison fails to state a claim that his due process rights were violated in connection with his 23-hour lockdown and loss of privileges.

IV.   <u>NO PHYSICAL INJURY</u>

Plaintiff's claim is also deficient under Section 1983 because he fails to allege "physical injury" sufficient to support his claim for monetary damages.  Specifically, the

Prison Litigation Reform Act of 1996 includes the following requirement in 42 U.S.C. § 1997e(e): "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury while in custody without a prior showing of physical injury." (Emphasis added). Harrison does not allege any specific "injuries" in this case but complains of his extended lockdown and lack of recreation, education, church and library access.

In several recent decisions, the Fifth Circuit has enforced the statutory physical injury requirement for prisoners who seek damages for intangible emotional or psychological harm, such as has been alleged by Harrison in this case. Harrison v. Smith, No. 03-40924, 2003 WL 22946387, at *1 (5th Cir. Dec. 11, 2003); Criollo v. Wilson, No. 02-21124, 2003 WL 22295491, at *1 (5th Cir. Oct. 7, 2003); Atkinson v. Johnson, 2003 WL 22012901, at *1 (5th Cir. Aug. 26, 2003); Herman v. Holiday, 238 F.3d 660, 665 (5th Cir. 2001).

The Fifth Circuit has explained that "[t]he 'physical injury' required by § 1997e(e) 'must be more than de minimus [sic], but need not be significant.'" Alexander v. Tippah County, 351 F.3d 626, 631 (5th Cir. 2003) (citing Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999) (quoting Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997)). Thus, in Alexander, the court found that "[Section] 1997e(e) precludes [plaintiffs] from recovering for their emotional and mental injuries" when the only physical injuries they

13

had suffered were nausea and one incident of vomiting.  Id.  Similarly, in Siglar, the court held that a prisoner's ear that was sore and bruised for three days was merely a de minimis injury.  Siglar, 112 F.3d at 193.

In this case, no physical injuries of any kind have been alleged by Harrison as a result of his confinement in lockdown.  As Section 1997e(e) provides and Fifth Circuit case law makes clear, Harrison is precluded as a matter of law from recovering damages for the psychological or other emotional injury he has asserted.  Thus, his complaint must be dismissed in this regard.

## V.      OUTSIDE RECREATION AND EDUCATION

Harrison complains that he was not provided with sufficient outdoor exercise or educational opportunities while housed in 23-hour lockdown.  The responses to his grievances state that he can walk around the pod area bottom floor to exercise during his daily hour outside the cell.  His grievances do not mention education.

This complaint is legally frivolous and wholly fails to state a claim.  Inmates have no protected liberty interest in specific recreational or educational opportunities.  Lato v. Attorney Gen., 773 F. Supp. 973, 978 (W.D. Tex. 1991).

As to educational or rehabilitative services, "a state has no constitutional obligation to provide basic educational or vocational training to prisoners."  Beck v. Lynaugh, 842 F.2d 757, 762 (5th Cir. 1988) (citing Newman v. Alabama, 559 F.2d 283,

14

292 (5th Cir. 1977), rev'd in part on other grounds sub nom. Alabama v. Pugh, 438 U.S. 781 (1978)); accord Miles v. Windham Sch. Dist., 78 Fed. Appx. 418, 2003 WL 22408345, at *1 (5th Cir. 2003); Honshul v. Foti, 51 F.3d 1045, 1995 WL 153425, at *2 (5th Cir. 1995).

Similarly, as to recreation, the Fifth Circuit "find[s] no validity to the complaint" of inmates in administrative segregation that they were "denied sufficient recreation periods," Beck, 842 F.2d at 762, in the absence of allegations of specific injury. To succeed on a claim under Section 1983 for lack of exercise, a prisoner must set forth facts sufficient to "support the existence of any health hazard under the specific circumstances involved." Ruiz v. Estelle, 679 F.2d 1115, 1152 (5th Cir.), amended in part, vacated in part on other grounds, 688 F.2d 266 (5th Cir. 1982); accord Delaney v. DeTella, 256 F.3d 679, 684 (7th Cir. 2001); Green v. Ferrell, 801 F.2d 765, 771 (5th Cir. 1986).

Harrison does not allege any health problems as a result of his limited ability to exercise outdoors. Because Harrison cannot show that he suffered any physical injury or violation of his constitutional rights of any kind as a result of the alleged denial of outdoor recreation, and because he has no constitutional right to educational services, he fails to state claims cognizable under Section 1983.

VI.   FIRST AMENDMENT CLAIMS:  RELIGION AND LAW LIBRARY

A.   Religion

Harrison alleges that he has been restricted from attending church while housed on lockdown.  "The Constitution requires that 'reasonable opportunities must be afforded to all prisoners to exercise . . . religious freedom.'"  Green v. McKaskle, 788 F.2d 1116, 1126 (5th Cir. 1986) (quoting Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972)).   While inmates clearly retain some protections afforded by the First Amendment, the rights of all prisoners are restricted. "'Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'"  O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (quoting Price v. Johnson, 334 U.S. 266, 285 (1948)).   The propriety of limiting prisoners' First Amendment rights "arise[s] both from the fact of incarceration and from valid penological objectives--including deterrence of crime, rehabilitation of prisoners, and institutional security."  Id. (emphasis added).

Evaluation of these valid penological objectives is committed to the judgment of prison administrators, and courts must afford deference to their evaluation.  Id. at 349. Thus, when the action of prison officials impinges on prisoners' constitutional rights, "the regulation is valid if it is reasonably related to legitimate penological interests."  Id.

In Harrison's case, prison officials' prohibitions of his attendance at religious meetings while he is housed in 23-hour lockdown creates no constitutional violation for two reasons.  First, these prohibitions serve the legitimate penological interests of maintaining institutional security and deterring conduct, either by Harrison or by others against Harrison, that poses a threat to security.  These concerns are reasonably related to legitimate penological interests.

Second, the restrictions do not constitute a substantial burden on Harrison's free exercise of his religion to such an extent that his limited First Amendment rights as a prisoner might be violated.  See Canell v. Lightner, 143 F.3d 1210, 1215 (9th Cir. 1998) ("relatively short-term and sporadic" interference with inmate's ability to pray not substantial burden on religious exercise); Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997) (burden must be substantial and interfere with a tenet or belief that is central to religious doctrine); Hamilton v. Schriro, 74 F.3d 1545, 1551 (8th Cir. 1996) (no constitutional violation when inmate has alternative means, including prayer, for practicing religion); Doty v. Williams, 995 F. Supp. 1081, 1083 (D. Ariz. 1998) (same) (citing O'Lone, 482 U.S. at 352).

Harrison fails to state a claim upon which relief might be granted because no constitutional violation has occurred in this context.

B.    Access to Law Library

Harrison alleges that he was denied access to a law library while in extended lockdown.  Prisoners have a First Amendment right of meaningful access to the courts through adequate law libraries or assistance from legally trained personnel.  Bounds v. Smith, 430 U.S. 817, 828 (1977); Pembroke v. Wood County, 981 F.2d 225, 229 (5th Cir. 1993).  However, "[w]hile the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court."  Eason v. Thaler, 73 F.3d 1322, 1328 (5th Cir. 1996) (quotation omitted) (emphasis added).

Significantly, to state a claim that his constitutional right of access to the courts was violated, Harrison must demonstrate that his position as a litigant was actually prejudiced.  Lewis v. Casey, 518 U.S. 343, 356 (1996); Eason, 73 F.3d at 1328; Walker v. Navarro County Jail, 4 F.3d 410, 413 (5th Cir. 1993) (citing Henthorn v. Swinson, 955 F.2d 351, 354 (5th Cir. 1992)).  The inmate must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim."  Lewis, 518 U.S. at 351.

Harrison wholly fails to allege the foregoing essential elements of his First Amendment claim in his complaint in all of three distinct ways.  First, it is apparent from

18

the pleadings in the criminal case against him in this court that Harrison is represented by an attorney in his criminal cases in both state and federal court.  Under these circumstances, plaintiff's right of access to the courts, as guaranteed by the Constitution and interpreted by Bounds, was clearly satisfied by his representation by counsel in his criminal proceedings.  Schrier v. Halford, 60 F.3d 1309, 1313-14 (8th Cir. 1995); Mann v. Smith, 796 F.2d 79, 83 (5th Cir. 1986); Morrow v. Harwell, 768 F.2d 619, 623 (5th Cir. 1985).  As to the instant civil action, it is clear that plaintiff has submitted materials sufficient to prosecute his civil case in this court.  Therefore, it must be concluded that his First Amendment right, which encompasses nothing more than the ability to prepare and transmit a necessary legal document to a court, Eason, 73 F.3d at 1328, was not violated.

It is also clear that no actual legal prejudice to Harrison's position as a litigant of the type required by Lewis was caused by any action or omission of the defendants. "[C]ausation is an element of a section 1983 claim; [defendants'] actions must have actually caused the deprivation . . . of which [plaintiff] complains." Hart v. O'Brien, 127 F.3d 424, 446 (5th Cir. 1997).  In Lewis, the Supreme Court made clear that an inmate must establish actual injury to state a claim for denial of his right of access to the courts. In examining the particular claims of the inmates in the Lewis case, the Court stated that the First Amendment right of prisoners to access to the courts is the right to "have a

19

reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." Lewis, 518 U.S. at 356 (emphasis added). For all of the reasons set out in this report, Harrison's claims are legally frivolous or otherwise barred by Supreme Court precedent.

As noted above, a prisoner's First Amendment right of access to the courts encompasses nothing more than the ability to prepare and transmit a necessary legal document to a court.  The record in Harrison's federal criminal case establishes that he is represented by counsel in both his state and federal criminal proceedings.  It is also clear that he has been able to file all necessary pleadings in the instant civil case.

 For all of the forgoing reasons, Harrison's claim concerning inadequate access to a law library at the jail is legally frivolous and fails to state a claim upon which relief can be granted under Section 1983.

## **RECOMMENDATION**

For all of the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and for failure to state a claim on which relief may be granted under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10)

days after being served with a copy shall bar that party, except upon grounds of plain

error, from attacking on appeal the unobjected-to proposed factual findings and legal

conclusions accepted by the district court, provided that the party has been served with

notice that such consequences will result from a failure to object.  Douglass v. United

Servs. Auto Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __22nd__ day of March, 2007.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE